UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEAN SMITH,

          Plaintiff,

          v.                                      Case No. 20-C-913

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

      Plaintiff Jean Smith filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. She contends that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

      Smith filed her application for disability and disability insurance benefits on March 16, 2017, alleging disability beginning August 11, 2016. She listed a brain injury and anxiety as the conditions limiting her ability to work. R. 283. After her application was denied initially and upon reconsideration, Smith requested a hearing before an ALJ. On March 5, 2019, ALJ Wayne Ritter held a hearing at which Smith, who was represented by counsel, and a vocational expert (VE) testified. R. 39–56.

      At the time of the hearing, Smith was 58 years old and lived in a house with her husband. R. 45. Smith testified that her disability began as the result of a brain bleed that caused her to fall

in her sister's bathroom and to hit her head in August 2016. R. 44. She reported that the head injury caused dizziness and other problems for which she received physical therapy and that she temporarily used a walker. She indicated that those symptoms subsided after a few months. *Id.* Smith testified that she still has issues with memory loss and comprehension, has difficulty reading, and gets overwhelmed easily. R. 44–45. When asked about her daily life, Smith stated that she sometimes runs errands, such as taking her mother shopping and to doctor appointments; does chores; gardens; works on puzzles; and cooks. R. 45–46. She indicated that she handles money. R. 46. She also confirmed that she drives, but is not comfortable doing so on the highway, and that she rides bicycles and travels, including recently to Hawaii and with plans to travel to Florida. *Id.* Smith testified that she takes medication for anxiety, fibromyalgia, acid reflux, and cholesterol. R. 46–47.

In a fourteen-page decision dated April 15, 2019, the ALJ concluded that Smith was not disabled. R. 20–33. In reaching his decision, the ALJ followed the five-step sequential evaluation process for determining disability established by the Social Security Administration (SSA). The ALJ determined that Smith meets the insured status requirements of the Social Security Act through December 31, 2022, and that she had not engaged in substantial gainful activity since August 11, 2016, her alleged onset date. R. 23. The ALJ found that Smith had the following severe impairments: depression, anxiety, and a traumatic brain injury. *Id.* The ALJ concluded that Smith did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24.

He then assessed her RFC, finding that Smith has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) "except she can only frequently climb ramps and stairs; occasionally climb ladders, ropes or scaffolds, and occasionally balance. The

2

claimant must avoid more than moderate exposure to unprotected heights, hazards or use of dangerous moving machinery. The claimant is also limited to simple, routine and repetitive tasks, with no fast-paced work, and only simple work-related decisions." R. 26. The ALJ found that Smith was unable to perform any past relevant work as an administrative assistant. R. 31. But he concluded that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including laundry laborer, dining room attendant, and kitchen helper. R. 32. He therefore concluded that Smith had not been under a disability from August 11, 2016, through the date of the decision. R. 33. The Appeals Council denied her request for review of the ALJ's decision, making that decision the final decision of the Commissioner of Social Security in her case. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

3

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court has reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S.

4

at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. State Agency Psychologist Opinions**

Smith asserts that, in formulating her RFC, the ALJ erred by improperly relying on the flawed opinions of the two state agency psychologists. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or

5

restrictions that could affect her ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014).

Dr. Soumya Palreddy completed a mental residual functional capacity assessment on July 17, 2017. R. 88–90. She noted that Smith was moderately limited in her ability to understand and remember detailed instructions, explaining that Smith "has difficulty with memory" and that "she would do best in a work setting with simple, repetitive tasks." R. 89. As to Smith's sustained concentration and persistence limitations, Dr. Palreddy opined that Smith was moderately limited in her ability to carry out detailed instruction and ability to maintain attention and concentration for extended periods. Dr. Palreddy noted that Smith has difficulty with memory and that she would do best in a work setting with simple, repetitive tasks. She also noted that Smith has difficulty with concentration and that she "would do best in a work setting that allowed her to be off tasks 10% of the work day." *Id.*

At the reconsideration level, Dr. Raymond Flannery, Jr., completed a mental residual functional capacity assessment on October 30, 2017. R. 106–07. He opined that Smith was moderately limited in her ability to understand and remember detailed instructions, explaining that "[c]laimant has difficulty with memory, she would do best in a work setting with simple, repetitive tasks. Despite her brain injury and memory and comprehension issues she is able to remember at least simple instructions." R. 106. With respect to her sustained concentration and persistence abilities, Dr. Flannery opined that Smith was moderately limited in her ability to carry out detailed

instructions and ability to maintain attention and concentration for extended periods. R. 106–07. He repeated Dr. Palreddy's explanation that "[c]laimant has difficulty with memory, she would do best in a work setting with simple, repetitive tasks. Claimant has difficulty with concentration, she would do best in a work setting that allowed her to be off tasks 10% of the work day." R. 107. He also added, however, that she "has some related anxiety that impedes her ability to complete tasks, but she is able to complete simple tasks and maintain concentration for two hour time periods in an eight hour day and a forty hour week." *Id.* In the additional explanation section of the form, Dr. Flannery stated:

> A. Claimant is able to understand and remember simple routine tasks.
> B. Claimant is able to sustain concentration and attention to simple routine tasks for a normal work week.
> C. Claimant is able to interact with general public, co-workers, and supervisors in a normal work setting with normal work place supervision.
> D. Claimant is able to adapt to routine changes in work setting, avoid routine hazards, and utilize public transportation.

*Id.* The ALJ assigned significant weight to these opinions.

Smith maintains that the state agency psychologists' opinions are flawed because they should have included limitations regarding verbal memory, recall, and working memory based on the findings of consultative examiner, Dr. William Camp. Dr. Camp performed a mental status evaluation in July 2017. R. 491–99. While Dr. Camp did note that Smith had low scores in working memory, he also found that she had moderate to high scores in immediate, general, and visual immediate memory, and she had a global assessment of functioning score of 70, with a "hopefully improving/improvable" prognosis. R. 497–98. Dr. Camp noted that his findings "appear to provide a generally valid estimate of her current levels of memory functioning at least in terms of those aspects of memory assessed using this memory testing device," R. 498, but his report did not contain any specific work limitations. In any event, the psychologists were not

7

required to conform their opinions to the findings of Dr. Camp. The state agency psychologists performed their own independent review of Smith's medical record and made their own independent findings. Smith does not assert that the ALJ erred in affording little weight to Dr. Camp's opinions. In short, there is no error.

Smith further argues that the state agency psychologists' Section III findings were flawed because their Section III narratives did not properly encapsulate their Section I findings. When completing the mental residual functional capacity forms, the state agency psychologists are instructed to first complete a "worksheet" where they are asked to rate the claimant's ability to perform certain activities by entering next to each ability described one of the following notations: "not significantly limited," "moderately limited," "markedly limited," "no evidence of limitation in this category," or "not ratable on available evidence." SSA Program Operations Manual System (POMS) DI 24510.060 (July 2, 2018). The POMS emphasizes that "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Id.* After completing the Section I worksheet, the state agency consultant is to set out in Section III of the form in narrative format the actual mental RFC assessment, explaining the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in a work setting. *Id.* In this case, the state agency consultants provided an RFC assessment in the narrative section of their forms. That is all that is required. Smith also argues that the state agency consultants did not provide any support for their finding that Smith would be off-task 10% of the workday. The ALJ did not adopt this limitation, however; therefore, there is no error.

Smith asserts that the ALJ improperly adopted their opinions without articulating how those opinions were supported by the record. "[A]n ALJ is required to determine the weight a

8

Case 1:20-cv-00913-WCG   Filed 09/15/21   Page 8 of 12   Document 27

nontreating physician's opinion deserves by examining how well [the physician] supported and explained his opinion, whether his opinion is consistent with the record, whether [the doctor] is a specialist in [the condition in question], and any other factor of which the ALJ is aware." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). In this case, the ALJ explained that the opinions are "consistent with the overall good clinical findings wherein the claimant was observed to be alert and oriented, in no acute distress, pleasant and friendly, well developed, well nourished, with normal/appropriate affect, and presented with adequate attention and adequately organized and focused statements." R. 29. He also noted that the opinions are congruent with the assigned residual functional capacity, wherein the ALJ found that Smith is "limited to simple, routine and repetitive tasks, no fast-paced work, and only simple work-related decisions." *Id.* The ALJ articulated good reasons for giving the state agency psychologists significant weight and provided an "accurate and logical bridge" between the evidence and his conclusions. *Roddy*, 705 F.3d at 636.

**B. Advanced Practice Nurse Practitioner (APNP) Linda Bahde's Opinions**

Smith also asserts that the ALJ failed to adequately consider the opinion of APNP Linda Bahde. As an initial matter, Smith maintains that the ALJ failed to comply with SSR 06-3p in evaluating APNP Bahde's opinions. SSR 06-3p does not apply to claims pending or filed after March 27, 2017, however. Instead, 20 C.F.R. § 404.1527(c) provides the correct framework for evaluating the opinion of a non-acceptable medical source, such as a nurse practitioner. When weighing medical opinions, the ALJ must consider the length, nature, and extent of the treatment relationship, the supportability of the medical source's opinion, the opinion's consistency with the record, and the source's specialization. § 404.1527(c). The ALJ must also "consider the entire record, including all medical and nonmedical evidence," and adequately explain how he weighed

9

Case 1:20-cv-00913-WCG    Filed 09/15/21    Page 9 of 12    Document 27

the opinions in light of the record. *Murphy v. Astrue*, 454 F. App'x 514, 518 (7th Cir. 2012) (internal quotation marks and citations omitted).

In August 2016, APNP Bahde noted that Smith "will need to be off work until she sees a neurologist" following her head injury and advised Smith to be "extremely careful and temporarily consider using a walker to prevent another fall." R. 416. On September 22, 2016, APNP Bahde indicated that Smith should stay off work for at least six additional weeks until she had been evaluated by her neurologist again. R. 458–59.

APNP Bahde completed a clinical assessment of pain form on September 26, 2018. R. 534. She checked boxes indicating that Smith's pain is not present in any significant degree and that physical activity, such as walking, does not increase pain. *Id.* She stated that in a 20-day calendar month, Smith would miss zero days of work due to pain because "pain is not an issue." *Id.* On October 31, 2018, APNP Bahde completed a physical residual functional capacity questionnaire. R. 536–39. There, APNP Bahde reported that Smith's diagnoses included a subarachnoid bleed, depression, and anxiety and that her symptoms included memory deficit, low stress tolerance, fatigue, depression, dizziness, and anxiety. R. 536. She noted that Smith's prognosis was fair to good and that "only time will allow the brain to heal as much as it is going to." *Id.* She checked a box indicating that Smith's impairments lasted or can be expected to last at least twelve months and that Smith's impairments (physical plus any emotional impairments) are reasonably consistent with the symptoms and functional limitations described in her evaluation. R. 536–37. APNP Bahde indicated that Smith would frequently experience pain or other symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks. R. 537. She noted that Smith would be able to sit more than two hours at one time before needing to get up, sit for about four hours in an eight-hour workday, and stand/walk for about two hours in an

eight-hour workday. R. 537–38. APNP Bahde stated that Smith does not need a job that permits shifting positions at will from sitting, standing, or walking and that Smith was not required to use a cane. R. 538. She noted that Smith could frequently lift less than ten pounds, occasionally lift ten to twenty pounds, and rarely lift fifty pounds. *Id.* APNP Bahde checked boxes indicating that Smith could frequently turn her head left or right and hold her head in the static position and occasionally look down, look up, twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. R. 539. She opined that Smith would be absent from work as a result of her impairments or treatment more than four days per month. *Id.*

The ALJ gave APNP Bahde's August and September 2016 opinions little weight. He explained that the opinions were expressly temporary in nature, the opinions were rendered shortly after Smith's brain injury, and APNP Bahde rendered more recent opinions. R. 31. The ALJ gave APNP Bahde's September and October 2018 opinions partial weight. He noted that the record supports that APNP Bahde had a treating relationship with Smith and treated her throughout the relevant period. R. 29. The ALJ explained that, while APNP Bahde is not an acceptable medical source, her September 2018 opinion that Smith's pain is overall not an issue is given some weight because it is consistent with the medical records which reflect that Smith has been able to overall tend to her activities of daily living, travel, help take her mother to doctor appointments and shopping, and tend to her household and gardening tasks despite her impairments. R. 30. He stated that, insofar as APNP Bahde opined in October 2018 that Smith would be limited essentially to a range of sedentary work and would be absent more than four days per month, that opinion was assigned little weight. He reasoned that the opinion was not supported by the record, including Smith's overall good physical findings on examination, where she is noted to have normal motor

11

strength, coordination and gait, 5/5 muscle strength, and full range of motion of all her extremities on examination. *Id.*

Smith asserts that the ALJ failed to address the full nature and extent of APNP Bahde's opinion because he did not discuss APNP Bahde's findings regarding Smith's mental impairments. APNP Bahde did not provide opinions regarding Smith's mental impairments, however. The ALJ considered the opinions APNP Bahde did provide and articulated sound reasons for finding the opinions were not supported by the record and affording those opinions little and partial weight. Smith cites to certain treatment notes in the record to establish that APNP Bahde's opinions were consistent with the record. She essentially asks the Court to reweigh the evidence and overrule the ALJ's decision. But on judicial review, the final decision of the Commissioner will be upheld if the ALJ applies the correct legal standards and supports his decision with substantial evidence. Because the ALJ applied the appropriate regulations and substantial evidence supports the ALJ's conclusions, his decision will be upheld.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 15th day of September, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge